ED FANNING CHEVROLET, INC., Plaintiff-Appellee, *v.* SERVLEASECO, INC., Defendant-Appellant.

Second District   No. 78-350

Opinion filed March 30, 1979.

312

Richard C. Hamper, of Montgomery, and Marcus & Sheets, of Chicago, for appellant.

Farrell, Edgerton & Hatfield, of West Chicago, for appellee.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This is an appeal by the defendant from a default judgment entered against it in an action to rescind an equipment lease and to recover moneys paid by the plaintiff under such lease. We disregard two other parties originally involved in this litigation—Investment Control, Inc., original assignor of the equipment, and Detroit Bank and Trust, assignee of the lease between Fanning and Servleaseco since their rights have been adjudged and they are not involved in this appeal.

In 1973, Ed Fanning Chevrolet, Inc., leased certain computer equipment from Servleaseco, a Michigan corporation, and signed a lease agreement with Servleaseco, which among other things, provided as follows:

"19. This lease shall be deemed to have been made in Wayne County, Michigan regardless of the order in which the signatures of the parties shall be affixed hereto, and shall be interpreted, and the rights and liabilities here determined, in accordance with the laws of the State of Michigan, and as part of the consideration for the lessor's executing this lease. Lessee hereby agrees that all actions or proceedings arising directly or indirectly from this lease shall be litigated only in courts having situs within the State of Michigan and lessee hereby consents to the jurisdiction of any

local, state or federal court located within the State of Michigan * * * ."

In June of 1975, Ed Fanning Chevrolet, not being satisfied with the performance of the computer equipment, sued Servleaseco (as well as Investment Control, Inc. and Detroit Bank and Trust) to rescind the lease and for moneys paid to the defendants thereunder. The defendants, as well as other parties, being Michigan corporations, service was had on them in August 1975 through the Illinois "Long Arm" statute (Ill. Rev. Stat. 1975, ch. 110, par. 17), which reads in part as follows:

"Act submitting to jurisdiction—Process. (1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(a) The transaction of any business within this State."

Servleaseco, not having appeared or answered within the time required by statute, the plaintiff in December of 1975, after due notice to the defendant of such motion, moved for default judgment against Servleaseco. A default judgment pursuant to such motion was duly entered. The claims of the other parties, having been consolidated with the litigation between Fanning and Servleaseco, over a period of time, the trial court, on March 22, 1977, gave judgment by confession against Fanning and in favor of Detroit Bank and Trust, and against Servleaseco in favor of Fanning in the amount of $18,004.85. Fanning duly satisfied the judgment against it in favor of Detroit Bank and Trust.

In July 1977, attorneys appeared specially for Servleaseco for the purpose of objecting to the trial court's jurisdiction over that company and moved to quash the service of summons and return on which the default judgment was based. The defendant's motion cited the lease provision quoted above as the basis of the motion. Thereafter, the parties having briefed the question of jurisdiction and submitted their arguments to the trial court, that court denied the motion to quash the service.

In this appeal the defendant takes the position that the trial court's order of default against Servleaseco is void for lack of jurisdiction. This is apparently based on the reasoning that by virtue of the quoted paragraph of the equipment lease the courts of Illinois were deprived of jurisdiction and the court of Michigan had jurisdiction of litigation arising out of the lease in question and such jurisdiction was exclusive. Thus, any order issued by an Illinois court was entirely without force and effect and void *ab initio*.

The defendant invokes section 1—105 of the Uniform Commercial Code (Ill. Rev. Stat. 1975, ch. 26, par. 1—105) to establish that agreements

as to governing law and the situs of future litigation are not against the public policy of Illinois. Said section reads as follows:

"Territorial Application of the Act; Parties' Power to Choose Applicable Law.

(1) Except as provided hereafter in this Section, when a transaction bears a reasonable relation to this State and also to another state or nation the parties may agree that the law either of this State or of such other state or nation shall govern their rights and duties. Failing such agreement this Act applies to transactions bearing an appropriate relation to this State.

(2) Where one of the following provisions of this Act specifies the applicable law, that provision governs and a contrary agreement is effective only to the extent permitted by the law (including the conflict of laws rules) so specified:

Rights of creditors against sold goods. Section 2—402.

Applicability of the Article on Bank Deposits and Collections. Section 4—102.

Bulk transfers subject to the Article on Bulk Transfers. Section 6—102.

Applicability of the Article on Investment Securities. Section 8—106.

Perfection provisions of the Article on Secured Transactions. Section 9—103."

■■ Comment on this argument will be made later on in the opinion. It is sufficient at the moment to point out that the quoted section only refers to the *law* which applies as between two forums—it has no bearing on the question of the court's jurisdiction: no one questions the right of an Illinois court to apply Michigan law in a proper case or vice versa.

Decisions on the question of private agreements restricting the situs of litigation to a particular forum are very sparse in Illinois. In fact, we find only two such decisions on the exact point here in controversy— *Johnson v. Royal Motor Car Insurance Association* (1922), 226 Ill. App. 147, and *Blair v. National Shirt & Overalls Co.* (1907), 137 Ill. App. 413. Both of these cases involved an attempt by insurance companies to deny the jurisdiction of a justice of the peace court to hear a controversy arising out of the contract between the parties. In each case the policy specified that the parties agreed that any litigation under the policy would be begun in the highest court of original jurisdiction, thus requiring the bypassing of the justice of the peace court. In each case the appellate court held the provision invalid. The *Johnson* case relied on the previous *Blair* case. In the *Blair* case, the court said:

"In our opinion, the provision that the one suit to be brought must be brought in the highest court of original jurisdiction is void

as against public policy. It is an attempt to interfere with the remedy which the courts should be free to apply, and to oust and deprive certain courts of the jurisdiction given them by law.

In Hall v. People's Mutual Fire Ins. Co., 6 Gray, 185, the court said, at page 192: 'It is a well-settled maxim that parties cannot, by their consent, give jurisdiction to courts where the law has not given it; and it seems to follow from the same course of reasoning that parties cannot take away jurisdiction where the law has given it. The court are therefore of the opinion that the stipulation in one of the conditions of this policy, that in case of loss, no action shall be brought upon it except in the County of Worcester, is no legal bar to an action in this county, where, by law, the action might be brought if no such condition had been made.' [Citation.]

The doctrine is tersely stated in Fahs et al. v. Darling et al., 82 Ill. 142, as follows: 'The jurisdiction of the courts, so far as relates to the subject-matter of litigation, depends not on the agreement of parties, but on the law.' " 137 Ill. App. 413, 418-19.

■■ The defendant attempts to construe the particular contract in this case as being the "subject matter" over which the court has jurisdiction. It is clear by "subject matter" in connection with the question of a court's jurisdiction is meant the general nature or kind of subject matter the court may consider—in this case, an agreement for the lease of specified equipment, not the particular contract in question. Otherwise, the court in the *Johnson* and *Blair* cases could not have ruled as it did since, using the court's argument here, the subject matter would, because of the policy provision, have been beyond its jurisdiction.

■■ The defendant also rejects the above Illinois cases as being entirely intrastate questions and in any event as having been decided before the enactment of the Uniform Commercial Code. However, as we have observed above, while the Uniform Commercial Code condones an agreement to be bound by the laws of a particular State, it makes no reference to any agreement whereby an Illinois resident, party to the agreement, is precluded from using the courts of Illinois to litigate questions arising out of the agreement.

The defendant cites *M/S Bremen v. Zapata Off-Shore Co.* (1972), 407 U.S. 1, 32 L. Ed. 2d 513, 92 S. Ct. 1907, as supporting its contention here that the modern trend is to give effect to "agreements to select the jurisdiction." The *Zapata* case, however, was a maritime case involving a dispute under admirality law between a citizen of the United States and a citizen of Germany. Zapata, a United States corporation, contracted with Unterweser, a German corporation, for the towing of an oil rig owned or leased by Zapata to a point off Ravenna, Italy. The agreement for towing contained a provision to the effect:

" 'Any dispute arising must be treated before the London Court of Justice.' " (407 U.S. 1, 2, 32 L. Ed. 2d 513, 516, 92 S. Ct. 1907.)

The rig was being towed by Unterweser's deep sea tug, the Bremen, when a storm arose in the middle of the Gulf of Mexico in which the rig was damaged. Zapata instructed the Bremen to tow the rig to Tampa, Florida, the nearest port of refuge. Therafter, Zapata began an action in the United States District Court in Florida *in rem* against the Bremen for negligently towing and breach of contract. Unterweser invoked the forum clause of the contract and moved to dismiss for lack of jurisdiction or on *forum non conveniens* grounds or, alternatively, to stay the suit pending submission of the suit to the "London Court of Justice."

We will not set forth all of the complicated legal maneuvers which followed; suffice it to say that eventually the question was posed to the United States Supreme Court whether the forum provision in the towing contract should be recognized as binding on the parties, or whether it should be held unenforceable as contravening public policy in this country. The supreme court held that the forum selection clause was valid and should be enforced "unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." (407 U.S. 1, 10, 32 L. Ed. 2d 513, 520, 92 S. Ct. 1907.) However, the very exceptional circumstances of the *Zapata* case were adverted to by the court in upholding the forum clause. The court said:

"For at least two decades we have witnessed an expansion of overseas commercial activities by business enterprises based in the United States. The barrier of distance that once tended to confine a business concern to a modest territory no longer does so. Here we see an American company with special expertise contracting with a foreign company to tow a complex machine thousands of miles across seas and oceans. The expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts. Absent a contract forum, the considerations relied on by the Court of Appeals would be persuasive reasons for holding an American forum convenient in the traditional sense, but in an era of expanding world trade and commerce, the absolute aspects of the doctrine of the Carbon Black case have little place and would be a heavy hand indeed on the future development of international commercial dealings by Americans." 407 U.S. 1, 8-9, 32 L. Ed. 2d 513, 519-20, 92 S. Ct. 1907.

It will be noted that no question of jurisdiction is raised here and, indeed, later in the opinion the court said: "No one seriously contends in this case that the forum-selection clause 'ousted' the District Court of jurisdiction over Zapata's action." (407 U.S. 1, 12, 32 L. Ed. 2d 513, 521, 92

S. Ct. 1907.) The opinion went on to set forth the rationale of the court's opinion in language which unmistakeably indicated that it was based on considerations of general policy under the circumstances of that case. The court said:

> "In this case, for example, we are concerned with a far from routine transaction between companies of two different nations contemplating the tow of an extremely costly piece of equipment from Louisiana across the Gulf of Mexico and the Atlantic Ocean, through the Mediterranean Sea to its final destination in the Adriatic Sea. In the course of its voyage, it was to traverse the waters of many jurisdictions. The Chaparral could have been damaged at any point along the route, and there were countless possible ports of refuge. That the accident occurred in the Gulf of Mexico and the barge was towed to Tampa in an emergency were mere fortuities. It cannot be doubted for a moment that the parties sought to provide for a neutral forum for the resolution of any disputes arising during the tow. Manifestly much uncertainty and possibly great inconvenience to both parties could arise if a suit could be maintained in any jurisdiction in which an accident might occur or if jurisdiction were left to any place where the Bremen or Unterweser might happen to be found. The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting." 407 U.S. 1, 13-14, 32 L. Ed. 2d 513, 522-23, 92 S. Ct. 1907.

Thus we see that that case did not pose the question here before us. No one contended that the United States District Court lost its jurisdiction to hear and rule on the case by reason of the forum-selection provision. What was decided was that, having in mind the complexities and international legal ramifications of the transaction, good public policy did not require the United States District Court to disregard the forum selected by the two respective nationals.

Having regard to the vast differences in the circumstances between the *Zapata* case and that before us, considerations of public policy in the case we consider here might be viewed quite differently. In our case the contract was between citizens of nearby States, moreover, the forum "selected" by a printed form of the defendant, was not a neutral forum but was the home State of the defendant, who drew the contract, so that the consideration which weighed heavily with the supreme court is not present here. Whether sound long-range policy dictates the same result is therefore debatable.

However, that is not a question we need resolve. In this case the defendant is not contending that the court should enforce the forum

selection provisions as a defense to the plaintiff's suit nor as a matter of policy with regard to the sanctity of contracts. What the defendant is contending is that the Illinois court's judgment is void *ab initio* because the court never acquired "jurisdiction." It is not entirely clear to us whether the contention is that the court lacked jurisdiction of the subject matter or jurisdiction of the parties. Inasmuch as we have already commented on the question of jurisdiction of the subject matter, we will confine our remarks to the question of jurisdiction of the person. We can see no question of that here. There is no contention that the service under the "Long Arm" Statute was faulty or that the defendant was not amenable to the reach of that statute. The argument as to the jurisdiction must be, then, that from the moment the lease was signed the Illinois courts were without jurisdiction to hear and decide any litigation arising out of the lease, hence any decision by an Illinois court as to this lease was void. That is a drastic position but it is, apparently, the defendant's position in this appeal. It has not invoked the forum clause by way of estoppel—it has not pleaded it as a defense nor sought to restrain an action against it as being against equity and good conscience in view of the agreement to sue only in Michigan.

Nor did the defendant act with reasonable promptness after being served. Defendant was served with summons, pursuant to the Illinois statute cited above in August 1975. Defendant did not respond in any way sofar as the record indicates and ignored the proceedings brought against it in the Illinois court, even after the default judgment was entered in December 1975. Indeed, even after the entry of final judgment against the defendant in March 1977, subsequent to all of the other cases of the involved parties having been finally adjudged, it continued to ignore the judgment, and it was not until July 1977 that the defendant came into court and then for the purpose of quashing the summons on the ground that the Illinois court had never had any jurisdiction to hear the case.

Thus the issue here is not whether the forum selection provision was against the public policy of Illinois or whether the court might give consideration to the limitation agreed to by the parties as a matter of fairness and respect for contracts. The judgment had already been entered, term time for challenging it—except under the provisions of section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72)— had already lapsed, and the defendant did not attempt to use the provision as a defense to a suit. Rather, the defendant seeks to use it as a wall, beyond which the Illinois courts have no power to penetrate. While we think contracts should be honored as between private parties, we are inclined to agree with the pronouncement of the *Hall* case, cited in *Blair* (137 Ill. App. 413), to the effect that since a private agreement cannot give

a court jurisdiction it would not otherwise have, neither can a private agreement take away the jurisdiction a court would otherwise have.

■ In the case before us the court exercised its undoubted jurisdiction over the subject matter, it acquired jurisdiction of the parties by proper use of the Illinois statute conferring jurisdiction by certain acts in Illinois, summons was served and returned and the judgment was entered by default, after the defendant failed to answer or appear pursuant to notice. These acts by an Illinois circuit court were lawful and proper and they were not rendered void by the agreement as to future litigation being restricted to the courts of Michigan. What the result would have been if the defendant had, at the outset, immediately contested the service on the ground that the plaintiff had acted in violation of a signed contract, we have no way of knowing, but it is entirely conceivable that the trial court would have given consideration to a plea based on the forum provision as a defense, if invoked in the proper form. Courts are loath to dishonor contracts solemnly made but that is not the issue in this case. The issue is whether the signing of the contract rendered any order or judgment of an Illinois court in connection with such contract null and void. That is an entirely separate proposition from the legal effect of the provisions on the parties themselves. It seeks to go outside the contract and deny a jurisdiction established by Illinois law and this we cannot accede to. The case was heard, the default judgment was entered, the court did have jurisdiction of the subject matter and the parties and the defendant cannot be allowed to come in afterward, after ignoring the process of the court, and by invoking a part of the agreement, render meaningless all that the court did over a period of some two years.

Whether the defendant has a remedy under section 72 of the Civil Practice Act is a matter we need not consider here. Nor do we decide—because it is not necessary here—whether such agreements are void as being against public policy. We recognize that agreements selecting a forum in case of future litigation have been given effect by the courts in some of our State. What we decide here is simply that the provision in the contract between the parties here, limiting the forum for future litigation to Michigan, did not have the effect of making the Illinois court's judgment void, if otherwise in accordance with due process.

The judgment of the circuit court of Kane County is therefore affirmed.

Judgment affirmed.

SEIDENFELD and NASH, JJ., concur.